**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>THE MOYER GROUP, INC.,<br><br>                    Debtor. | **FOR PUBLICATION**<br><br>Case No. 16-10261 (MG)<br><br>Chapter 7 |
| JOHN S. PEREIRA, as Chapter 7 Trustee for the estate of THE MOYER GROUP, INC.,<br><br>                    Plaintiff,<br><br>        v.<br><br>FRENKEL BENEFITS, LLC, ROBERT ROGERS, THE ESTATE OF HENRY S. MOYER, JR., NANCY MOYER, individually and as personal representative of the ESTATE OF HENRY S. MOYER, JR. and LISA SAEZ a/k/a LISA SAEZ-WOLCHUCK,<br><br>                  Defendants. | Adv. Pro. Case No. 18-01011 (MG) |

**MEMORANDUM OPINION AND ORDER GRANTING**
**FRENKEL BENEFIT, LLC'S MOTION TO DISMISS THE**
**ELEVENTH CLAIM FOR RELIEF FOR UNJUST ENRICHMENT**

*A P P E A R A N C E S:*

McCARTER & ENGLISH, LLP
*Attorneys for Defendant Frenkel Benefits, LLC*
825 8th Avenue, 31st Floor
New York, NY 10019
By:    David J. Adler, Esq.

ACKERMAN LLP
*Attorneys for Chapter 7 Trustee, John S. Pereira*
666 Fifth Avenue, 20th Floor
New York, NY 10103
By:    John P. Campo, Esq.
         Paul J. Rutigliano, Esq.

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

The Moyer Group, Inc. (the "Debtor") is the chapter 7 debtor in this case filed on February 3, 2016. John S. Pereira is the Debtor's chapter 7 trustee (the "Trustee"). The Debtor was formed in 1999 by its sole shareholder, Henry S. Moyer, Jr. ("Moyer"), and was in the business of selling employee benefits insurance to individual and commercial customers. One of its competitors, TWG Insurance Agency, LLC d/b/a The Westport Group ("TWG"), sued the Debtor in 2014 for more than $3 million for alleged breach of a non-disclosure agreement, claiming that the Debtor's employees disclosed TWG's confidential information about insurance products to TWG's competitors. The Trustee contends that Debtor's unadjudicated liability to TWG rendered the Debtor insolvent "no later than June 3, 2014." (Am. Compl. ¶ 17 (ECF Doc. # 16).)

In February 2018, the Trustee filed an adversary complaint, amended in May 2018, against the estate of Moyer (Moyer died in April 2017) and others seeking to avoid and recover preferential and fraudulent transfers allegedly made by and/or received by the defendants, and recover damages for the defendants' conduct on a variety of theories. The Amended Complaint alleges fourteen causes of action, only one of which—the Eleventh Claim for Relief (Unjust Enrichment)—is the subject of the currently pending motion to dismiss (the "Motion," ECF Doc. # 8) filed by defendant Frenkel Benefits, LLC ("Frenkel").

The factual predicate for the Eleventh Claim for Relief (Unjust Enrichment) and several other claims is the sale of the Debtor's business in October 2014 to Frenkel for $2,320,000, plus an earn-out (later calculated as an additional $294,807.04) (the "Final Payment"). The Trustee alleges that the Debtor's sale to Frenkel was for less than reasonably equivalent value at a time the Debtor was insolvent because the Debtor only received approximately $837,000 of the total

2

consideration paid by Frenkel. The sale of the Debtor's business was structured under the parties' Asset Purchase Agreement (the "APA") so that Frenkel paid Moyer (individually) approximately $928,000, and paid another of Debtor's "insider," defendant Robert Rogers ("Rogers"), (individually) approximately $555,000. (Am. Compl. ¶¶ 19–22.) As explained by the Trustee, Frenkel's payments to Moyer and Rogers were structured as payments for *their* "Goodwill" (the "Goodwill Transfers"). (*See id.* ¶ 21 ("Although all of the Acquired Assets sold to Frenkel belonged to the Debtor, the APA was structured to defraud the Debtor's creditors by incorrectly claiming that part of the Debtor's Goodwill sold to Frankel belonged to Moyer and Rogers, instead of the Debtor."); *id.* ¶ 23 ("The Trustee contends that any Goodwill acquired by Frenkel pursuant to the APA actually belonged to the Debtor and not to Moyer or Rogers, notwithstanding that the APA described goodwill as belonging to them.").)

The Trustee alleges that *all* of the Goodwill sold to Frenkel was property of the Debtor, and none of it was property of Moyer and Rogers in their individual capacities. The issue of whom the Goodwill sold under the APA belongs to—the Debtor, as alleged by the Trustee, or Moyer and Rogers, as alleged by the defendants—is the central issue in this adversary proceeding. Indeed, in the First, Third, Fourth, Fifth, Seventh, Eighth, Ninth, and Tenth Claims for Relief, the Trustee seeks to recover the "Goodwill Transfers" to Moyer and Rogers as fraudulent transfers recoverable under state or federal avoidance statutes, and Frenkel is named as a defendant in each of those Claims for Relief, none of which it has moved to dismiss.

The Eleventh Claim for Relief against all defendants, including Frenkel, alleges that the Goodwill Transfers are also recoverable based on the state law theory of unjust enrichment. (*See* Am. Compl. at 23–25.) Frenkel's Motion to dismiss argues that the portion of the Eleventh Cause of Action for unjust enrichment dealing with the Goodwill Transfers (the only portion of

3

the claim asserted against Frenkel) must be dismissed for failure to state a claim upon which relief can be granted. Frenkel also seeks to dismiss the Trustee's claim for recovery of the Final Payment under that same theory, but as explained below, the parties now agree that the Final Payment was never paid by Frenkel, and Frenkel has agreed to pay the Final Payment to the Trustee.

The issue of to whom the Goodwill sold under the APA belonged is an interesting legal issue that will no doubt have to be resolved with respect to the other causes of action, but it is unnecessary to resolve that issue now to decide Frenkel's Motion to dismiss the Amended Complaint's unjust enrichment claim. For the reasons explained below, Frenkel's Motion to dismiss the unjust enrichment claim is granted because the Amended Complaint does not allege that Frankel was enriched by receiving consideration for which it did not pay.

## I. BACKGROUND

### A. Procedural Background

Frenkel's Motion argues that the Eleventh Claim for Relief based on unjust enrichment must be dismissed under Bankruptcy Rule 7012(b) and Federal Rule of Civil Procedure 12(b)(6). (ECF Doc. # 8.) The Plaintiff filed a memorandum of law in opposition to the Motion (the "Opposition," ECF Doc. # 29).[1] Frenkel filed an untimely reply in support of its Motion (the "Reply," ECF Doc. # 33).

---

[1] The Plaintiff also filed the declaration of John P. Campo in support of its Opposition (ECF Doc. # 30). The declaration advises the Court the Plaintiff filed the Amended Complaint solely to include language in compliance with the Court's April 25, 2018 order (ECF Doc. # 13) to comply with Bankruptcy Rule 7008.

4

B.     **Factual Background**[2]

The Debtor is a New York corporation formed in 1999 by Moyer, an officer, principal, and the sole shareholder of the Debtor. (Am. Compl. ¶¶ 5, 14.) Moyer passed away in April 2017. (*Id.* ¶ 5.) The Debtor was engaged in the business of selling employee benefits insurance to individual and commercial customers. (*Id.* ¶ 14.)

On or about June 3, 2014, TWG filed a complaint against the Debtor in the Superior Court of the Commonwealth of Massachusetts captioned *In re: TWG Insurance Agency, LLC v. The Moyer Group, Inc.*, Civil Action No. 2014-1777 (the "TWG Action"). (*Id.* ¶ 15.) TWG sought damages from the Debtor in excess of $3 million for the Debtor's alleged breach of a non-disclosure agreement, as certain employees of the Debtor allegedly disclosed confidential materials to TWG's competitors related to insurance products developed by TWG. (*Id.* ¶ 16.)

Shortly thereafter, Moyer, together with Rogers, an insider officer and director of the Debtor, agreed to sell substantially all of the Debtor's assets. (*Id.* ¶¶ 14, 18.) On or about October 28, 2014, the Debtor, Moyer, and Rogers entered into the APA to sell substantially all of the Debtor's assets, tangible and intangible, to Frenkel in exchange for $2,320,000 plus an earn-out (the "Asset Sale"). (*Id.* ¶ 19.) The earn-out was based on Frenkel's earnings from the Debtor's clients from months 13 to 24 after the closing of the APA. (*Id.* ¶ 20.)

Pursuant to the APA, Frenkel paid the Debtor approximately $837,000 from the sale of its assets, and Frenkel paid Moyer and Rogers, in their individual capacities, approximately $928,000 and $555,000, respectively, in consideration for the business' Goodwill. (*Id.* ¶¶ 22, 26.) The closing for the Asset Sale took place on November 1, 2014. (*Id.* ¶ 24.)

---

[2]   The following facts are taken from the Amended Complaint, and are assumed to be true for the purposes of this Motion.

5

The Amended Complaint alleges that on or after January 6, 2017, Frenkel paid Moyer a Final Payment of $294,807.04 pursuant to the APA's earn-out. (*Id.* ¶ 31.) The Motion, however, states that Frenkel is holding the Final Payment and never paid it to Moyer. (Mot. at 3 n.2.) During oral argument of the Motion, counsel agreed that Frankel is holding the Final Payment of $294,807.04; Frankel's counsel stated that the funds will be turned over to the Trustee.

Finally, although not directly relevant to this Motion, the Complaint also alleges that in the period between 2012 through 2015, Moyer engaged in a pattern of writing off his personal debts to the Debtor, altering the Debtor's financial statements to reflect inaccurate balances based on those write-offs, and making transfers to the Defendants, for no consideration. (Am. Compl. ¶¶ 34–45.) The Amended Complaint also seeks to recover those other write-offs and transfers, but none of those claims is asserted against Frankel.

### C. Frankel's Motion

Frenkel moves to dismiss the Eleventh Claim for Relief (Unjust Enrichment) under Bankruptcy Rule 7012(b) and Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. (Mot. at 3.) Frenkel argues that the Trustee only asserts the following allegations in support of his claim against Frenkel for unjust enrichment:

- Defendants have taken the value and benefit of the assets and proceeds of Debtor's business;
- Defendants, therefore, have been unjustly enriched at the expense of Debtor's estate; and
- By reason of the foregoing, the Trustee is entitled to recover on behalf of Debtor's estate damages for the diminished value of Debtor's business (and its assets and proceeds) while held and operated by Defendants in the following amounts:
    a. $928,000 from Defendants Moyer and Frenkel, jointly and severally, on account of the Goodwill Transfers;
    b. $555,000 from Defendants Moyer, Rogers, and Frenkel, jointly and severally, on account of the Goodwill Transfers;

6

     c. $294,807.04 from Defendant Moyer and Frenkel, jointly and severally, on account of the Final Payment transfer.

(*Id.* at 4–5.)

  Frenkel argues the unjust enrichment claim should be dismissed against it for two reasons. First, the unjust enrichment allegations are threadbare: The Trustee has alleged no facts that demonstrate how Frenkel benefited at the Debtor's expense, nor has the Trustee alleged any facts as to why equity and good conscience require restitution from Frenkel. (*Id.* at 5.) Second, because a valid and enforceable written contract ordinarily precludes recovery in quasi contract, and because, Frenkel contends, the validity of the APA is not disputed, the APA governs the terms of the transaction and bars any claims by the Trustee for unjust enrichment or other quasi-contractual theory. (*Id.* at 5–6.)

  **D.** **The Trustee's Opposition**

  In his Opposition, the Trustee contends that the Amended Complaint has met the pleading requirements necessary to assert a claim for unjust enrichment. The Trustee alleges that the Amended Complaint states that after the Debtor became insolvent, Frenkel, Moyer and Rogers purposefully manufactured, or helped to manufacture, the Asset Sale in a way to personally profit Moyer and Rogers through the Goodwill Transfers, rather than to provide reasonably equivalent consideration to the Debtor in exchange for its own goodwill and related assets. (Opp. at 8–9 (citing Am. Compl. ¶¶ 18, 21–23, 27).) By doing so, the Trustee submits, Frenkel was complicit in fraudulently transferring and conveying assets that belonged to the Debtors and/or the Debtor's creditors. (*Id.* at 9 (citing Am. Compl. ¶ 108–11).) The Trustee contends that "it is clear from the Amended Complaint that equity and good conscious [sic] should not permit Frenkel to retain that benefit." (*Id.*)

7

The Trustee disputes Frenkel's argument that a claim for unjust enrichment may not lie where there is valid contract between the parties governing the same subject matter. (*Id*.) The Trustee argues that the "Amended Complaint does not assert a breach of contract claim, and in any event, Frenkel's contention is premature at this stage of the proceeding because 'courts in this district have routinely allowed plaintiffs to advance past the pleading stage on an alternative theory of unjust enrichment,' particularly where 'it remains unsettled whether an enforceable contract in fact governs the dispute.'" (*Id*. at 10 (citing *Dervan v. Gordian Group LLC*, 2017 WL 819494, at *12 (S.D.N.Y. Feb. 28, 2017) (internal citations omitted)).)

### E.    Frankel's Reply

In its Reply, Frankel argues that "[i]n the Complaint, the Trustee does not allege that the *total* consideration paid by Frenkel for the assets transferred under the APA for $2,320,000 was less than the reasonably equivalent value of such assets." (Reply at 3 (emphasis in original).) Rather, according to Frenkel, the Amended Complaint only alleges that the payments made by Frenkel to Moyer and Rogers for $1,483,000 were for the Debtor's property and those transfers should be avoided for the benefit of the estate. (*Id.*) Frenkel argues that the Amended Complaint does not allege (i) how or why Frenkel was enriched by acquiring the assets in exchange for $2,320,000; or (ii) why it would be inequitable to permit Frenkel to retain the assets it acquired under the APA. (*Id.*)

Further, Frenkel submits that "New York law provides that an unjust enrichment claim is available *in the absence* of an express agreement," (*id.* at 4 (emphasis in original)), and explains that in this case the Trustee does not seek to void the APA. (*Id.* at 6.) "Rather, the Trustee has specifically alleged the validity of the APA and that it governed the transactions that are the subject of his action." (*Id.*)

8

## II.  LEGAL STANDARD

### A.  Dismissal Under Fed. R. Civ. Pro. 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, made applicable here by Rule 7012 of the Federal Rules of Bankruptcy Procedure, a complaint need only allege "enough facts to state a claim for relief that is plausible on its face." *Vaughn v. Air Line Pilots Ass'n, Int'l*, 604 F.3d 703, 709 (2d Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis removed)). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (citation and internal quotation marks omitted). Plausibility "is not akin to a probability requirement," but rather requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation and internal quotation marks omitted). "The question in a Rule 12 motion to dismiss is 'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Medcalf v. Thompson Hine LLP*, 84 F. Supp. 3d 313, 320 (S.D.N.Y. 2015) (citing *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012)).

Courts use a two-prong approach when considering a motion to dismiss. *Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 717 (2d Cir. 2013) (stating that motion to dismiss standard "creates a 'two-pronged approach' . . . based on '[t]wo working principles'") (quoting *Iqbal*, 556 U.S. at 678–79; *McHale v. Citibank, N.A. (In re the 1031 Tax Grp., LLC)*, 420 B.R. 178, 189–90 (Bankr. S.D.N.Y. 2009). First, the court must accept all factual allegations in the complaint as true, discounting legal conclusions clothed in factual garb. *See, e.g.*, *Iqbal*, 556 U.S. at 677–78; *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 124 (2d Cir. 2010) (stating that a court must "assum[e] all well-pleaded, nonconclusory factual allegations in the complaint to be true") (citing *Iqbal*, 556 U.S. at 678). Second, the court must

determine if these well-pleaded factual allegations state a "plausible claim for relief." *Iqbal*, 556 U.S. at 679 (citation omitted).

Courts do not make plausibility determinations in a vacuum; it is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (citation omitted). A claim is plausible when the factual allegations permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citation omitted). A complaint that pleads only facts that are "merely consistent with" a defendant's liability does not meet the plausibility requirement. *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted). "The pleadings must create the possibility of a right to relief that is more than speculative." *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008) (citation omitted).

On a motion to dismiss, in addition to the complaint, a court may consider written instruments, such as a contract, that are either attached to the complaint or incorporated by reference. *See, e.g.*, Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); *Official Comm. of Unsecured Creditors v. Conseco Fin. Servicing Corp. (In re Lois/USA, Inc.)*, 264 B.R. 69, 89 (Bankr. S.D.N.Y. 2001) ("In addition to the complaint itself, a court may consider, on a motion to dismiss, the contents of any documents attached to the complaint or incorporated by reference . . . .").

### B. Unjust Enrichment Under New York Law

Under New York law, to recover for unjust enrichment, the plaintiff must establish that (1) the defendant was enriched; (2) the enrichment was at the plaintiff's expense; and (3) equity

10

and good conscience require restitution. *See, e.g.*, *Golden Pac. Bancorp. v. Fed. Deposit Ins. Corp.*, 273 F.3d 509, 519 (2d Cir. 2001) (applying New York law); *Hutton v. Klabal,* 726 F. Supp. 67, 73 (S.D.N.Y. 1989) (citing *Morse/Diesel, Inc. v. Trinity Indus., Inc.,* 655 F. Supp. 346, 353 (S.D.N.Y. 1987)). "Unjust enrichment, however, does not require the performance of any wrongful act by the one enriched. . . . What is required, generally, is that a party hold property under such circumstances that in equity and good conscience he ought not to retain it." *See Simonds v. Simonds*, 380 N.E.2d 189, 194 (N.Y. 1978) (citation omitted). Under New York law, "whether there is unjust enrichment may not be determined from a limited inquiry confined to an isolated transaction, and, instead, there must be a realistic determination based on a broad view of the human setting involved." *In re Bernard L. Madoff Inv. Sec. LLC*, 458 B.R. 87, 132 (Bankr. S.D.N.Y. 2011) (citation omitted).

"[T]he theory of unjust enrichment lies as a quasi-contract claim and contemplates an obligation imposed by equity to prevent injustice, in the absence of an actual agreement between the parties." *Georgia Malone & Co. v. Rieder,* 19 N.Y.3d 511, 516 (2012) (internal citations and quotation marks omitted). The existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter. *Clark-Fitzpatrick, Inc. v. Long Island R. Co.*, 70 N.Y.2d 382, 388 (1987) (finding that where the relationship between the parties was defined by a written contract, and plaintiff chose not to rescind the agreement, but instead to complete performance of the contract and sue to recover damages, plaintiff may not seek recovery based on an alleged quasi contract) (omitting citation); *see also Beth Israel Med. Ctr. v. Horizon Blue Cross and Blue Shield of N.J., Inc.*, 448 F.3d 573, 586 (2d Cir. 2006) (holding that under New York law, hospitals subject to contracting hospital agreements (CHA) with out-of-state health insurance

11

plan could not recover under theory of unjust enrichment based on plan's failure to reimburse them at statutorily required rates, where valid and enforceable written CHAs governed particular subject matter of claims). A "quasi contract" only applies in the absence of an express agreement, and is not really a contract at all, but rather a legal obligation imposed in order to prevent a party's unjust enrichment. *Clark-Fitzpatrick, Inc.*, 70 N.Y.2d at 388 (omitting citations). "Quasi contracts are not contracts at all, although they give rise to obligations more akin to those stemming from contract than from tort. The contract is a mere fiction, a form imposed in order to adapt the case to a given remedy. Briefly stated, a quasi-contractual obligation is one imposed by law where there has been no agreement or expression of assent, by word or act, on the part of either party involved. The law creates it, regardless of the intention of the parties, to assure a just and equitable result." *Id.* at 388–89.

However, Rule 8(a) provides that "[r]elief in the alternative or of several different types may be demanded," Fed. R. Civ. P. 8(a)(3), and "courts have refused to dismiss unjust enrichment claims on the basis that they were duplicative of fraudulent transfer claims, noting that 'it is conceivable that the plaintiff could recover under one theory but not the other.'" *In re Hellas Telecomms. (Lux.) II SCA*, 535 B.R. 543, 585 (Bankr. S.D.N.Y. 2015) (citing *In re Operations N.Y. LLC,* 490 B.R. 84, 100 (Bankr. S.D.N.Y. 2013)). In fact, "courts in this district have routinely allowed plaintiffs to advance past the pleading stage on an alternate theory of unjust enrichment." *Dervan*, 2017 WL 819494, at *12 (citing *Next Commc'ns, Inc. v. Viber Media, Inc.*, 2016 WL 1275659, at *8 (S.D.N.Y. Mar. 30, 2016)); *see also Silverman v. H.I.L. Assocs. Ltd. (In re Allou Distribs., Inc.),* 387 B.R. 365, 412 (Bankr. E.D.N.Y. 2008) ("While there can be no doubt that the Trustee would not be entitled to duplicative relief, there similarly is no doubt that at the pleadings stage, a plaintiff is not required to elect a single theory upon

12

which to proceed."). If "it remains unsettled whether an enforceable contract in fact governs the dispute at hand, . . . the Court sees no reason not to permit [the Plaintiff] to proceed with the unjust enrichment theory of liability." *Id.*; *see also Kottler v. Deutche Bank AG*, 607 F. Supp. 2d 447, 468 (S.D.N.Y. 2009) (noting that "where there is a bona fide dispute as to the existence of a contract or where the contract does not cover the dispute in issue, a court should not dismiss a claim of unjust enrichment at the motion-to-dismiss stage") (citation omitted).

### III.    DISCUSSION

The Eleventh Claim for Relief against Frenkel cannot survive Frenkel's Motion to dismiss. Because the Amended Complaint does not allege that Frenkel was *enriched* as a result of the Asset Sale, it does not assert with sufficient specificity that Frenkel was unjustly enriched. The Trustee's theory is that *all* of the consideration paid by Frenkel under the APA should have been paid to the Debtor. While the Trustee argues that Frenkel should have paid the Debtor for the Goodwill sold under the APA, rather than Moyer and Rogers in their individual capacities, nowhere does the Amended Complaint allege that Frenkel received any benefits for which it did not pay. The facts alleged in the Amended Complaint may be actionable against Frenkel on one of the other claims in the Amended Complaint, but *not* on the unjust enrichment claim.

In order to survive the Motion to dismiss, the factual allegations in the Amended Complaint must permit "the court to draw the reasonable inference," *Iqbal*, 556 U.S. at 678, that (1) Frenkel was enriched; (2) Frenkel's enrichment was at the expense of the Debtor; and (3) equity and good conscience require restitution. *See, e.g.*, *Golden Pac.*, 273 F.3d at 519.

In this case, the Amended Complaint states that:

- Shortly after TWG brought the TWG Action against the Debtor, and thus shortly after the Debtor became insolvent, Moyer and Roger agreed to sell substantially all of the Debtor's assets in a scheme to personally profit the Debtor's insiders, Moyer and Rogers, at the expense of creditors (Am. Compl. ¶¶ 16–18);

13

- Moyer and Rogers had been put on notice of the extent of the liabilities existing against the Debtor, as a result of the TWG Action, and that accordingly, Moyer and Rogers knew that the Debtor was insolvent and participated in the Asset Sale with actual intent to hinder, delay, or defraud the Debtor's creditors (*id.* ¶ 25);

- Pursuant to the APA, the Debtor received only approximately $837,000 from the sale of the Debtor's assets, while it was Moyer and Roger who received, in their individual capacities, payment of approximately $928,000 and $555,000, respectively, in consideration for the Debtor's Goodwill. (*id.* ¶¶ 22, 26, 29);

- Although all of the assets sold to Frenkel belonged to the Debtor, the APA was structured to defraud the Debtor's creditor by incorrectly claiming that part of the Debtor's Goodwill sold to Frenkel belonged to Moyer and Rogers. (*id.* ¶ 21);

- At the time of the Asset Sale, the value of the Debtor's assets far exceeded $837,000, and Moyer and Rogers knew or reasonably should have known that the Debtor was already insolvent or would be rendered insolvent as a result of the Asset Sale (*id.* ¶ 28).

- The Final Payment of $294,807.04 made by Frenkel to Moyer was generated from clients that belonged to the Debtor and transferred to Frenkel pursuant to the APA, and that the Debtor received less than a reasonably equivalent value in exchange for the transfer of its clients to Frenkel. (*Id.* ¶¶ 31–33.)

For the reasons explained below, Frenkel's Motion to dismiss the Eleventh Claim for Relief as against Frenkel is granted, with respect to the unjust enrichment claims arising from both the Goodwill Transfers and the Final Payment.

### A. The Amended Complaint Does Not Plead Facts with Sufficient Specificity Demonstrating that Frenkel Was Unjustly Enriched as a Result of the Goodwill Transfers

The allegations in the Amended Complaint do not plead facts demonstrating that Frenkel was enriched as a result of the Goodwill Transfers, and, thus do not state a claim for unjust enrichment upon which relief can be granted. *See Golden Pac.*, 273 F.3d at 519 (holding that

14

under New York law, for a successful claim of unjust enrichment, the plaintiff must establish, *inter alia*, that the *defendant* was enriched).

The APA provided for Frenkel's purchase of all the Debtor's assets, including its Goodwill. Pursuant to the APA, Frenkel paid a total of $2,320,000 to acquire both the Debtor's tangible assets and the Debtor's Goodwill (assuming, as argued by the Trustee, the Goodwill sold under the APA belonged to the Debtor). While the Trustee argues that the Debtor only received part of the consideration paid under the APA for the sale of the Debtor's assets and Goodwill, the Trustee does *not* allege that Frenkel purchased the tangible and intangible assets, including Goodwill, for less than the assets were worth. While the Amended Complaint contends that the Debtor should have received the *total* consideration for the Asset Sale, the Trustee does not contend that the Debtor's tangible assets and Goodwill were worth more than the $2,300,000 paid by Frenkel. In other words, there is no allegation that Frenkel was enriched by paying less than reasonable equivalent value for the assets it purchased.

Rather, the Trustee contends that the Debtor was defrauded because Moyers and Rogers received payment, in their individual capacities, for the Debtor's Goodwill. (*See, e.g.*, Am. Compl. ¶ 21 ("Although all of the Acquired Assets sold to Frenkel belonged to the Debtor, the APA was structured to defraud the Debtor's creditors by incorrectly claiming that part of the Debtor's Goodwill sold to Frenkel belonged to Moyers and Rogers, instead of the Debtor.").) But the Trustee only contends that the amount received *by the Debtor* for the assets transferred was less than a reasonably equivalent value for its tangible assets and Goodwill. (*See id.* ¶ 27 ("Frenkel did not provide adequate consideration *to the Debtor* in exchange for the Debtor's assets it purchased in the Asset Sale.") (emphasis added).) Had the Trustee contended that the assets sold under the APA were worth more than $2,300,000, the Trustee may have been able to

15

prevail on Frenkel's Motion to Dismiss. But the Trustee did not do so. It is true that the Amended Complaint states that "[t]he Debtor received only approximately $837,000 from the sale of its assets, *even though the value of those assets was significantly greater*." (*Id.* at 26 (emphasis added).) This allegation does not save the Trustee's claim. The $2,300,000 paid by Frenkel for the assets is obviously greater than the $837,000 paid to the Debtor. But this contention does not support the argument, made by Trustee's counsel during argument, that the value of the assets sold to Frenkel was greater than $2,300,000. Accordingly, the Amended Complaint does not plead that Frenkel was unjustly enriched by the transfers under the APA. Therefore, the Amended Complaint does not state a claim against Frenkel for unjust enrichment.

The Trustee may be correct that Moyer and Rogers were unjustly enriched by the payments to them for the Debtor's Goodwill (assuming that the Trustee is correct that all of the Goodwill belonged to the Debtor), and that equity and good conscience would in that case demand restitution to the Debtor. It also may be that Frenkel is liable on one of the other claims for relief, including with respect to the amount of the Goodwill Transfers, but the current Motion addresses only the unjust enrichment claim.

For these reasons, Frenkel's Motion to dismiss the Eleventh Claim for Relief with respect to the Goodwill Transfers is **GRANTED**.

For the avoidance of doubt, the Court rejects Frenkel's argument that the existence of the APA precludes recovery in *quasi contract*. Although the disputed transfers were made pursuant to the APA, the Amended Complaint alleges that the APA was structured to defraud creditors. (*See* Am. Compl. ¶ 21.) While a binding contract generally precludes recovery in quasi contract, *see Clark-Fitzpatrick, Inc.*, 70 N.Y.2d at 388 (holding that a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for

16

events arising out of the same subject matter), if a contract is structured to defraud creditors, there is no basis at the pleading stage to dismiss claims based on other theories, including quasi-contract and unjust enrichment. Here, the Amended Complaint alleges that the disputed transfers should be avoided as actual and constructive fraudulent transfers. Frenkel does not contest the sufficiency of the fraudulent transfer claims in the Amended Complaint. The Court therefore concludes there is a *bona fide* dispute as to the validity and enforceability of the APA. Under these circumstances, the Court would not dismiss the unjust enrichment claim (which is also asserted against Moyer and Rogers) when the validity of the contract remains unsettled. *See Dervan*, 2017 WL 819494, at *12 (holding that where "it remains unsettled whether an enforceable contract in fact governs the dispute at hand, . . . the Court sees no reason not to permit [the Plaintiff] to proceed with the unjust enrichment theory of liability"); *Kottler*, 607 F. Supp. 2d at 468 (noting that "where there is a bona fide dispute as to the existence of a contract or where the contract does not cover the dispute in issue, a court should not dismiss a claim of unjust enrichment at the motion-to-dismiss stage") (citation omitted).

Frenkel's counsel cited four cases in support of his argument that dismissal of the unjust enrichment claim was warranted based on the existence of the APA. None of those cases is applicable to this case. For instance, in *EBC I, Inc.*, *v. Goldman, Sachs & Co.*, the New York Court of Appeals dismissed the plaintiff's unjust enrichment claim because of the existence of a valid contract governing the subject matter. 832 N.E.2d 26, 33 (N.Y. 2005). In *EBC I*, the plaintiff did not dispute the validity and enforceability of the contract, but had only asserted a claim for fraud under New York and New Jersey law, which had been dismissed with leave to replead. *Id.* at 30–31. In *Ebin v. Kangadis Food Inc.*, the unjust enrichment claim was dismissed as duplicative of plaintiff's other contract and tort claims, despite the plaintiff's cause

17

of action sounding in fraud. 2013 WL 6504547, at *7 (S.D.N.Y. Dec. 11, 2013). *Ebin* is inapposite because the Trustee's Amended Complaint alleges that the APA had been structured to defraud the Debtor and its creditors, which validity is thus contested. The *Stoltz v. Fage Dairy Processing Indus., S.A.*, 2015 WL 5579872, at *26–27 (E.D.N.Y. Sept. 22, 2015), and *Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 296 (S.D.N.Y. 2015), also cited by Frenkel's counsel, are distinguishable for the same reasons as the *Ebin* case.

The unjust enrichment claim may not be dismissed at the pleading stage simply because other claims for relief providing similar recovery—namely preference and fraudulent transfer claims—are also asserted by the Trustee. *See Hellas Telecomms*, 535 B.R. at 585 ("Courts have refused to dismiss unjust enrichment claims on the basis that they were duplicative of fraudulent transfer claims, noting that 'it is conceivable that the plaintiff could recover under one theory but not the other.'").

### B.  The Unjust Enrichment Claim with Respect to the Final Payment Should Be Dismissed Because the Final Payment Was Never Paid to Moyers

Finally, Frenkel's Motion to dismiss the unjust enrichment claim for relief with respect to the $294,807.04 Final Payment from Frankel to Moyers, based on Frenkel's earnings from the Debtor's clients, is **GRANTED** provided that Frenkel turns over the Final Payment to the Trustee.

18

## IV. CONCLUSION

For the reasons explained above, Frenkel's Motion to dismiss the Eleventh Claim for Relief is **GRANTED.**

**IT IS SO ORDERED.**

Dated:   June 26, 2018
         New York, New York

_____*Martin Glenn*_____
MARTIN GLENN
United States Bankruptcy Judge